T.C. Memo. 2004-150

UNITED STATES TAX COURT

ESTATE OF JOSE MARTINEZ, DECEASED,
PATRICK G. MARTINEZ, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6641-02.                    Filed June 22, 2004.

<u>Robert B. Scarlett</u>, for petitioner.

<u>Bradley C. Plovan</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  Mr. Jose Martinez (decedent) was a general
partner in a partnership.  Decedent personally guaranteed certain
of the partnership's debts.  After the partnership filed for
bankruptcy under chapter 11, the bankruptcy court discharged
decedent's personal liability with respect to the partnership's
debts and decedent's personal guaranty thereof.  The issue for

decision is whether the resulting discharge of indebtedness income is excludable from gross income pursuant to section 108.[1] We hold that it is.[2]

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

On October 10, 2000, decedent died. His estate was administered by Patrick Martinez and was closed on June 19, 2001. When the petition was filed, Patrick Martinez resided in Timonium, Maryland.

The Partnership's Debts

At all relevant times, decedent was a general partner in Notchcliff Associates (the partnership), a Maryland general partnership that was engaged in the business of developing a continuing care facility.

On April 9, 1985, the partnership borrowed $18 million from The Commercial Bank (the bank) for use in its business. On that same date, decedent and other general partners of the partnership executed a personal guaranty agreement, whereby they jointly and

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code for the taxable year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Essentially identical issues are presented in three other cases also decided today: Ralph J. and Joan B. Mirarchi, docket No. 6638-02; Chester L. Price, docket No. 6639-02; and Jose Gracia and Nancy Gracia, docket No. 6642-02.

severally guaranteed this loan.  On May 29, 1987, the partnership borrowed an additional $2,956,000 from the bank.[3]

The Partnership's Bankruptcy Case

On June 30, 1988, the partnership initiated a bankruptcy case by filing a voluntary chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Maryland (the bankruptcy court).  On November 13, 1989, the bankruptcy court appointed a chapter 11 trustee (the trustee) to administer the partnership's assets and to develop an orderly liquidation and sale of the assets.

Decedent's Contribution Agreement

The trustee negotiated with the partnership's general partners, including decedent, to obtain some contribution from them to pay the partnership's debts.  The trustee filed a reorganization plan which, among other things, proposed a means whereby general partners of the partnership could contribute to a partnership release fund as a means of resolving the partnership's claims and other creditor's claims against its general partners.  On November 27, 1990, the bankruptcy court confirmed the plan.

Thereafter, the trustee reached a negotiated settlement with some of the general partners, including decedent, whereby in exchange for paying agreed-upon sums to the partnership's bankruptcy estate, the contributing partners would be discharged

---

[3] The Apr. 9, 1985, personal guaranty agreement also applied to this loan.

from liability as permitted by the confirmed bankruptcy plan.  On September 15, 1995, decedent executed a contribution agreement and pursuant to its terms contributed $15,000 to the partnership's bankruptcy estate in exchange for release of "all claims or potential claims of creditors against * * * [decedent] arising out of or related to" the partnership.

On December 19, 1995, the bankruptcy court entered an order approving the contribution agreement.  In its order, the bankruptcy court specifically discharged and released decedent from any and all liability to the trustee and the bank arising out of or relating to the partnership, decedent's status as a general partner in the partnership, and the April 9, 1985, personal guaranty agreement.  In addition, the bankruptcy court's order released decedent from "the claims or potential claims of all creditors" of the partnership.  The bankruptcy court further ordered that decedent "is subject to the jurisdiction of the Bankruptcy Court."

Tax Reporting

For the 1995 tax year, the partnership issued decedent a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., allocating to him $397,640 of discharge of indebtedness income.  Decedent excluded this entire amount from his gross income as reported on his 1995 Federal income tax return.

Notice of Deficiency

By notice of deficiency, respondent determined that $397,640 of discharged debt should be included in decedent's 1995 income.

## Discussion

Generally, discharge of indebtedness gives rise to gross income to the obligor.  Sec. 61(a)(12); see Gitlitz v. Commissioner, 531 U.S. 206, 213 (2001).  Section 108 provides certain exceptions to this general rule.  Pursuant to one of these exceptions, income from discharge of indebtedness is excluded from gross income if "the discharge occurs in a title 11 case".  Sec. 108(a)(1)(A).  This provision is applied at the partner level.  Sec. 108(d)(6).  Consequently, the relevant question is whether decedent's debt (as opposed to the partnership's debt) was discharged "in a title 11 case."

For purposes of section 108, a "title 11 case" is defined as "a case under title 11 of the United States Code (relating to bankruptcy), but only if the taxpayer is under the jurisdiction of the court in such case and the discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court."  Sec. 108(d)(2).

The partnership's chapter 11 bankruptcy was a case under title 11 of the United States Code.  See 11 U.S.C. ch. 11 (2000). Pursuant to its December 19, 1995, order, the bankruptcy court discharged and released decedent from all liability to the trustee, the bank, and all other creditors that might have claims arising from or relating to the partnership, decedent's status as

a general partner in the partnership, and the April 9, 1985, personal guaranty agreement.  In the same order, the bankruptcy court explicitly asserted its jurisdiction over decedent for this purpose.  Giving due regard to principles of judicial comity, we discern no reason to second-guess the bankruptcy court's assertion of jurisdiction over decedent in the partnership's chapter 11 bankruptcy case.  See 28 U.S.C. secs. 151, 157, 1334 (2000).

We conclude that decedent's debts in question were discharged "in a title 11 case" within the meaning of section 108(d)(2).  Accordingly, we hold that decedent's discharge of indebtedness income is excludable from gross income pursuant to section 108(a)(1)(A).

We have considered all arguments raised by the parties. Arguments not addressed herein are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for petitioner</u>.